JASPER E. JONES, Judge.
Appellants, Hamblin Investment, Inc., John E. Hamblin and Tim E. Hamblin, are the partners of Sonic Drive Inn of Bossier City No. 1, a limited partnership, and the same parties are the partners of Sonic Drive Inn of Bossier City No. 2, a limited partnership. On September 29, 1983, No. 1 commenced the hamburger restaurant business at 2961 East Texas Street, Bossier City, and on the same date No. 2 commenced the hamburger restaurant business at 3504 Barksdale Blvd., Bossier City. No. 1 and No. 2 failed to purchase occupational licenses required by Bossier City Ordinance No. 27 of 1982. Pursuant to the Bossier City ordinance and LSA-R.S. 47:401, Bossier City instituted this action by rule on November 22 to enjoin No. 1 and No. 2 from doing business until they had paid their occupational license taxes plus interest and penalties. The rule was tried on November 30. At the conclusion of the trial appellants and the City entered a stipulation that appellants would that day pay the occupational license taxes based upon the 1982 gross sales of Sonic Drive Inn of Bossier City No. 1, Inc. and Sonic Drive Inn of Bossier City No. 2, Inc., which had conducted Sonic hamburger business at the locations now occupied by the partnerships during the year of 1982, subject to the later judgment to be rendered by the court. Pursuant to the stipulation appellants paid the tax.
We construe this stipulation to provide for a payment of the taxes under protest and by the terms of the stipulation the City agreed to return the taxes paid if the court rejected its demand that appellants pay the amount demanded by the City or cease doing business. On December 21 judgment was rendered in favor of the City and the judgment was signed on January 9, 1984 and this appeal followed.
The issue presented is whether the amount of the 1983 occupational license taxes for partnership No. 1 and for partnership No. 2 should be calculated on the 1982 gross sales of Sonic Drive Inn of Bossier No. 1, Inc. and Sonic Drive Inn of Bossier No. 2, Inc., as required by the City, or whether the 1983 occupational license taxes of partnership No. 1 and partnership No. 2 should be determined under the tax provisions which apply to new businesses.
*1271 Prior to a sheriffs sale on September 7, 1983 the Sonic hamburger business had been conducted by Bossier No. 1, Inc. at the site where the Sonic hamburger business was commenced by partnership No. 1 on September 29. Prior to the sheriffs sale the Sonic hamburger business had been conducted by Bossier No. 2, Inc. at the site where the Sonic hamburger business was commenced by partnership No. 2 on September 29.
Prior to November 23, 1982 the sole stockholders of the two corporations were Robert A. Gass and John E. Hamblin. On that date in a complex sales, chattel mortgage and sublease agreement, John E. Hamblin sold his stock in these two corporations on credit to Robert A. Gass.[1] He sold on credit an interest he had in the movable property used in the businesses to Robert A. Gass and the two corporations. He subleased the sites where the businesses were conducted to Robert A. Gass and the corporations. John E. Hamblin received as security for the payment of .the price of the credit sales of the stock, the movable property, and the consideration for the subleases, notes executed by the corporations and Gass secured by a chattel mortgage on all the corporation stock and on all the movable property used in the operations of the two businesses. Gass and the corporations defaulted on the payments required by the notes and John E. Hamblin foreclosed on the chattel mortgage and purchased at the September 7 sheriffs sale all the stock in the corporations and the movable property used by the corporations in the conduction of the businesses.
The two partnerships were thereafter formed on September 19 with John E. Hamblin owning a 58% interest in each. The partnerships admit they acquired the prior business assets of the corporations by virtue of the sheriffs sale, though the exact manner by which they made their respective acquisitions from John E. Hamblin who purchased the stock of the corporations and movable property of the corporations at the sheriffs sale, is not in the record.
The power of local governing units within the state to levy and collect annual occupational license taxes is regulated by Title 47, Sub-Title II, Chapter 3 of the Revised Statutes consisting of LSA-R.S. 47:341— 405.[2] The local units cannot levy a greater tax than is set by the statute. LSA-R.S. 47:341. Chapter 3 contains a number of tables setting the tax schedule the local units can charge for different types of businesses at different income levels. LSA-R.S. 47:346-395. LSA-R.S. 47:353 contains the license tax schedule applicable to restaurants and the amount of the tax is based upon gross sales. The table in this provision increases the tax upward as the gross sales increase. The provisions of LSA-R.S. 47:398 A establish base periods from which the revenue of the business is taken to be used in determining the amount of the tax. 47:398 A provides:
§ 398. Period used where gross revenue is the measure of the license A. The basis for determining the amount of the annual licenses provided by this Chapter, where the license is measured by gross revenue, shall be as follows:
(1) If the business has been conducted previously by the same party, or by a party or parties to whom he or they are successors, the annual gross receipts, gross sales, gross premiums, gross fees and/or gross commissions (as the case may be) earned, regardless of whether received or accrued, during the preceding calendar year for which the license is issued shall be the basis for determining the amount of the annual license.
(2) If the business is begun during the calendar year for which the license is issued the license for the year of commencement shall be based on the gross receipts, gross sales, gross premiums, *1272 gross fees or gross commissions earned, regardless of whether received or accrued, during the first thirty days of business, multiplied by the number of months, or major fraction thereof, remaining in the calendar year; provided, that any business which opens after June thirtieth of the year in question whose estimated gross revenue for the remainder of the year is less than one-half of the maximum gross revenue allowed in the minimum rate under the classification of the particular business, shall pay for the remainder of the year at one-half of the minimum rate.
(3) If the business is begun less than thirty days before the end of the calendar year for which the license is to be issued the tax shall be based on the gross receipts, gross sales, gross premiums, gross fees or gross commissions earned, regardless of whether received or accrued, during the calendar year; provided that one-half of the annual rate shall apply to such businesses whose gross revenue for the period operated during the calendar year is less than one-half of the maximum gross revenue allowed in the minimum rate under the classification of the particular business.
(4) The license tax of a business for the calendar year following that of commencement shall be based on the gross receipts, gross sales, gross premiums, gross fees or gross commissions earned, regardless of whether received or accrued, during the previous year, divided by the number of days in operation during the year of commencement, and multiplied by three hundred sixty-five.
Appellants were informed by their attorney that the businesses should be taxed under 47:398 A(2). When appellants attempted to secure the licenses they tendered to the city a check for $5.00 (representing $2.50 per business) for the 1983 taxes.[3] The city rejected the tender contending that since the businesses were operated in 1982, although by different owners, the tax should be based on the 1982 gross sales of the corporations which had previously conducted business at the same sites where the partnerships are doing business. Following the trial of the rule on November 30 the City accepted $300.00 plus $27.00 interest and penalties from partnership No. 1 and issued the occupational license and the City accepted $180.00 plus $16.20 from partnership No. 2 and issued an occupational license.[4]
47:398 A contemplates that whenever a business was in operation, as the same business or same type of business, for any part of the previous year and is owned by the current operator or by an operator to whom the current operator-is a successor, the current year’s tax is based on the income that was either earned or would have been earned, if the business had operated the full previous year. See 47:398 A(l) and (4). The reason for the rule is that once the business has been in operation for any part of a prior year, the taxing authority has a basis for estimating the current year’s sales. The sole exception to the rule is where a new business is opened for the first time during the course of the year. In that event the business will only be taxed on the income it will earn during the part of the year it operates estimated from the first 30 days of operation. 47:398 A(2).
Appellants contend they should be taxed as the operators of newly opened businesses under 47:398 A(2) because they do not meet the “successor to the previous operator” requirement under 47:398 A(l). They argue that a purchaser of a business at a judicial sale cannot be considered a successor to the previous owner because the sale is not negotiated and the purchaser has no opportunity to protect himself from prior tax liability of the judgment debtor.
*1273 The argument is without merit. The successor is never liable for the tax owed by his predecessor. The successor’s liability for occupational tax does not exist until it commences business and does not become past due until 10 days thereafter under Sec. 15-27 of the Bossier City ordinance. The amount of the successor’s tax is what is determined by the gross sales of the predecessor during the preceding year. The issue here presented is not the manner in which these partnerships acquired title to the assets of the corporations but whether the business which they are conducting is essentially the same business which had been conducted by their predecessor. If the business is essentially the same the scheme of the tax statute provides that the gross sales of the prior operator of the business provides a proper base upon which the amount of the tax can be computed. We have been cited no prior case where the definition of successor in this tax situation has been determined and our research for a similar case has produced no result. C.C. art. 3556 states “Successor is, generally speaking, the person who takes the place of another.” Black’s Law Dictionary, 5th Ed. defines successor as “One who takes the place that another has left, and sustains the like part or character ...”
The provision of Sec. 398 A(l) does not limit the succeeding taxpayer to which it is applicable to those successors who purchased the business from the party who conducted it the previous year. Rather the provision refers to the business being conducted by a successor. The intent of the provision is that it applies to the same business though it be conducted by some entity other than the entity which conducted the business the prior year.
The partnerships are conducting the business of selling Sonic hamburgers which is exactly the business conducted by the corporations. The partnerships are using the same movable property previously used by the corporations and are using similar names and the same outside signs at the same locations. No doubt the partnerships are using the same or similar franchises as those used by the corporations. The partnerships took the place of the corporations as the operators of the Sonic hamburger business and they are successors to the corporations within the contemplation of 47:398 A(l).
The judgment requiring them to pay the tax calculated as provided in this section or cease doing business is correct.
We note the occupational taxes were past due 10 days after September 29 and the amount in excess of the tax collected from these partnerships did not exceed the 12% per annum interest and 5% per month penalty which is authorized by the Bossier Parish ordinance on past due occupational licenses.
AFFIRMED at appellant’s cost.

. In this document John A. Hamblin conveyed his interest in the Sonic franchises to Robert A. Gass. The document contains declarations indicating the corporations owned part interest in the Sonic franchises.

. Bossier City has expressly adopted the state statute in its entirety. Bossier City Ordinance No. 27 of 1982, § 15-22.

. Whenever a new business opens in Bossier City the city charges an initial license fee of one-half the minimum tax set by statute for that class of business. The minimum tax for restaurants is $5.00. LSA-R.S. 47:353. The remainder of the tax due, if anything, is collected after the first 30 days of operation.

. The tax was based upon the 1982 gross sales of the corporations and the interest and penalty charged was apparently based upon the tax becoming due 10 days after the partnerships commenced business on September 29.